## S94A1415. KENT v. KENT.
(452 SE2d 764)

HUNT, Chief Justice.

We granted the application for discretionary appeal in this case to determine the propriety of the trial court's rulings regarding collateral estoppel and self-execution with respect to a divorce decree's provision for termination of alimony on the wife's cohabitation with another man. We reverse.

The parties' divorce decree incorporated their settlement agreement which provided the husband would pay the wife alimony until "the Wife marries, dies or begins living in a state of cohabitation with another man, whichever event shall first occur." When the husband stopped making alimony payments, claiming the wife was cohabiting, the wife filed an action against him for contempt. The court in the contempt proceeding found the wife was not cohabiting, but held the husband was not in wilful contempt because he had justifiable reasons to believe the wife was cohabiting with another man. Thereafter, the husband filed an action for declaratory judgment regarding his obligation to pay alimony, and for modification of alimony under OCGA § 19-6-19 (b), the "live-in-lover" statute. The trial court (a different judge) found the husband was not barred by the doctrine of collateral estoppel by the contempt court's finding on the issue of the wife's cohabitation, and that the termination provision regarding cohabitation was self-executing.

1. The trial court erred in holding the husband was not estopped by the earlier judgment in the contempt proceeding on the issue of whether the wife was cohabiting with another man.[1] We agree with the husband that collateral estoppel applies where an issue of fact or law is actually litigated and determined by a valid judgment, *and* the determination is essential to the judgment. That determination is then conclusive in a subsequent action between the same parties. *Boozer v. Higdon,* 252 Ga. 276, 278 (1) (313 SE2d 100) (1984); Restatement, 2d, Judgments, § 27 (1982).[2] We disagree, however, that

[1] This estoppel applies only to the same time period involved in the contempt proceedings. Of course, the husband is not estopped from claiming the wife is or was cohabiting for a period other than that claimed in the contempt proceeding.

[2] The wife argues the second element, that the determination be essential to the judgment, is unnecessary. A number of cases from our court and the Court of Appeals state that collateral estoppel (or "estoppel by judgment") applies to matters "necessarily *or* actually adjudicated." (Emphasis supplied.) See, e.g., *Powell v. Powell,* 200 Ga. 379, 383 (2) (37 SE2d

the determination of whether the wife was cohabiting with another man was not essential to the judgment in the contempt proceeding. While it is true, as the husband argues, that the focus of contempt proceedings in alimony cases is whether or not refusal to comply with the alimony provisions of a decree is "willful," McConaughey, Ga. Divorce, Alimony & Child Custody (1993 ed.), p. 203, § 14-1, the court, of necessity, must first determine whether the party refusing to pay is in fact failing to comply with the decree. In this instance, the husband would have been in compliance with the divorce decree in terminating alimony had the wife been cohabiting. Indeed, this was the husband's position in the contempt hearing and the focus of his argument. The contempt court expressly rejected the husband's contention that the wife was cohabiting, held the husband was required to continue paying alimony, but declined to exercise its powers of contempt, finding the husband's violation of the alimony terms of the decree was not wilful. The issue of cohabitation was litigated, determined, and essential to the judgment in the contempt proceeding, and the husband was barred by the doctrine of collateral estoppel from relitigating that issue. *Boozer v. Higdon,* supra.[3]

2. The husband argues, and the trial court held, that the provision of termination of alimony on the wife's cohabitation with another man permitted the husband to stop payment thereunder without first seeking judicial relief. The trial court cited, and the husband cites, certain child support cases in which we have held provisions inverting support obligations where the child elects to live with the other parent to authorize the cessation of child support. E.g., *Weaver v. Jones,* 260 Ga. 493, 494 (3) (396 SE2d 890) (1990); *Pearce v. Pearce,* 244 Ga. 69 (257 SE2d 904) (1979). *Cf. McGregor v. McGregor,* 237 Ga. 57 (226

---

191) (1946); *Thompson v. Thompson,* 199 Ga. 692, 695 (35 SE2d 262) (1945); *Firestone Tire &c. Co. v. Pinyan,* 155 Ga. App. 343, 346 (2) (270 SE2d 883) (1980); *King Sales Co. v. McKey,* 105 Ga. App. 787, 788 (1) (125 SE2d 684) (1962). However, the question of whether the previously litigated issue was or was not essential to the earlier judgment did not seem to be disputed in those cases. The correct rule, followed in some of our appellate decisions, see, e.g., *Boozer v. Higdon,* supra; *Sorrells Constr. Co. v. Chandler Armentrout &c.,* 214 Ga. App. 193 (447 SE2d 101) (1994), is that followed by the Restatement. See also Restatement, 2d, Judgments, § 27, comment h.

[3] The husband argues that the contempt court's decision regarding cohabitation cannot be the subject of collateral estoppel because the trial court ruled *for* the husband on the issue of contempt, and the husband could not have appealed the contempt court's decision regarding cohabitation. We agree with the husband that a party's opportunity to appeal an issue is a factor in determining whether the party is precluded from relitigating the issue. Restatement, 2d, Judgments, § 28 (1) and Comment a (1982). Here, the trial court's ruling regarding the husband's obligation to pay alimony and the wife's cohabitation was, for the contested time period, a final one which should have been appealable. We need not determine whether the contempt court's order was, on its face, appealable. It was the husband's duty to obtain an appealable order on that issue, and to the extent he did not, he cannot now argue that collateral estoppel should not apply.

SE2d 591) (1976). Compare *Christmas v. Langston*, 241 Ga. 331, 332 (245 SE2d 290) (1978). Where, as here, the party obligated to make payments under a decree believes that circumstances have arisen which, under the decree, authorize termination of payments, but there are questions of fact in that regard, that party acts at his or her peril in unilaterally stopping payments. By doing so, that party risks being found in contempt, or, at any rate, liable for all payments, if the other party chooses to file a motion for contempt. The better practice would be for the party obligated to make payments to raise the issue in an action for declaratory relief. In light of our holding in Division 1 in this case the trial court erred by holding the husband was entitled to relief under the provision in question.[4]

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

DECIDED JANUARY 30, 1995 —
RECONSIDERATIONS DENIED FEBRUARY 20 AND MARCH 20, 1995.

*O. Wayne Ellerbee,* for appellant.
*Elliott & Blackburn, Walter G. Elliott II, W. Gus Elliott, Dodd & Turner, Roger J. Dodd,* for appellee.

---

[4] Under OCGA § 19-6-19 (b) the voluntary cohabitation by the former spouse with a third party is always *grounds* for modification of a support obligation. See *Allen v. Allen*, 265 Ga. 53 (452 SE2d 767) (1995). Of course, under the statute, the obligated spouse is *never* authorized to terminate payments by claiming the former spouse is in a meretricious relationship without first seeking judicial relief. *Hendrix v. Stone*, 261 Ga. 874 (412 SE2d 536) (1992). (Also, by statute, on motion, a trial court in which an action for modification is pending, may temporarily modify the alimony obligation pending final resolution of the modification petition. OCGA § 19-6-19 (c); *Hendrix v. Stone*, supra at 875, n. 4.) However, where, as here, the parties *agree* that alimony will terminate on the former spouse's cohabitation with a third party, when that situation occurs, the obligated spouse, *under the terms of the agreement*, is authorized to stop making alimony payments.