## S95A1172. QUILLEN v. QUILLEN.
### (462 SE2d 750)

CARLEY, Justice.

Appellant and appellee were divorced pursuant to a decree which incorporated their settlement agreement. One provision of the incorporated settlement agreement obligated appellee to pay monthly alimony until appellant "cohabits as same is defined by Georgia law." When appellee subsequently failed to pay the alimony, appellant filed this contempt action against him. After conducting a hearing, the trial court found that, as of January 1, 1994, appellant cohabited with a third party. Based upon this finding, the trial court concluded that appellee's obligation to pay alimony ended on that date and that he was not in contempt for failing to make payments thereafter. We granted appellant's application for a discretionary appeal from the trial court's order.

1. Appellant urges that the modification of a final divorce decree can "only be accomplished by proceedings under OCGA § 19-6-19" and that the trial court erroneously exceeded its jurisdiction by modifying the final divorce decree in this contempt action.

To obtain the modification of a final divorce decree, proceedings must be instituted pursuant to OCGA § 19-6-19. However, unless prohibited by statute or public policy, all persons are free to contract on any terms regarding a subject matter in which they have an interest. *Porubiansky v. Emory University*, 156 Ga. App. 602, 603 (275 SE2d 163) (1980), aff'd, 248 Ga. 391 (282 SE2d 903) (1981). Thus, we have recognized that divorcing parties are free to contract for self-executing changes in an alimony obligation upon the occurrence of certain events. *Perry v. Perry*, 265 Ga. 186, 187 (2) (454 SE2d 122) (1995); *Weaver v. Jones*, 260 Ga. 493, 494 (3) (396 SE2d 890) (1990). OCGA § 19-6-19 provides that cohabitation is a ground for seeking a judicial modification of an alimony obligation. However, nothing in that statute provides that the divorcing parties themselves cannot contract for the automatic termination of the alimony obligation of one party upon the cohabitation of the other. Thus, in *Kent v. Kent*, 265 Ga. 211, 213 (2), fn. 4 (452 SE2d 764) (1995), we held that, if

the parties *agree* that alimony will terminate on the former spouse's cohabitation with a third party, [and] that situation occurs, the obligated spouse, *under the terms of the agreement*, is authorized to stop making alimony payments.

(Emphasis in original.) This holding in *Kent* recognizes the contractual freedom of divorcing parties to agree to a self-executing termination of an alimony obligation upon the occurrence of cohabitation.

Under *Kent*, the former spouse who brings a contempt action will

not be faced with what, in essence, is the obligated spouse's impermissible counterclaim for modification of alimony. The holding in *Kent* is premised upon the divorcing parties' mutual agreement to an automatic termination of alimony in the event of cohabitation, which agreement has been incorporated into the divorce decree. Thus, when cohabitation is relied upon as the ground for ceasing to pay and a contempt action is filed, the trial court is called upon to determine whether the pre-existing incorporated agreement authorizing the obligated spouse's automatic termination of the obligation has been triggered by the former spouse's subsequent cohabitation. Therefore, the question for resolution by the trial court is whether the obligated spouse is in contempt of the existing terms of the divorce decree, not whether the obligated spouse is entitled to a subsequent modification of the existing terms of that decree. The obligated spouse's determination that the former spouse has cohabited may be a subjective one, but the trial court must make an objective determination in that regard. If the former spouse did cohabit, then the alimony obligation has been terminated in accordance with the pre-existing incorporated agreement and the obligated spouse cannot be found to be in contempt of the divorce decree. If, on the other hand, there was no such cohabitation, the obligated spouse "risks being found in contempt, or, at any rate, liable for all payments. . . ." *Kent v. Kent*, supra at 213 (2).

It may be true that, under *Kent*, the former spouse who brings a contempt action will not be afforded the same venue and jury trial options as would be available in a modification proceeding instituted by the obligated spouse pursuant to OCGA § 19-6-19. However, that is entirely a consequence of the former spouse's own agreement to an automatic termination of alimony upon his or her cohabitation. If a former spouse does not wish to have the alimony obligation subject to an automatic termination upon his or her cohabitation, then he or she should not agree to it. If, on the other hand, the former spouse has made such an agreement, then he or she is bound thereby and must abide by the procedural, as well as the substantive, consequences thereof.

The premise of appellant's argument is that a modification proceeding pursuant to OCGA § 19-6-19 is the exclusive method by which divorcing parties can accomplish a termination of alimony based upon cohabitation. However, this premise is contrary to *Kent*, which is based upon established legal principles and to which we adhere. Therefore, appellant's contention that the trial court exceeded its jurisdiction in this contempt action is without merit.

2. The trial court's order contains the finding that, "based on the evidence presented, including that of [appellant] herself, [she] has cohabited with a third party." Although appellant urges that this find-

ing is not supported by the evidence, she has not provided a transcript of the contempt hearing. In the absence of a transcript, we must assume that the evidence presented at the hearing was sufficient to support the finding of the trial court. *Everett v. Everett*, 256 Ga. 632 (1) (352 SE2d 370) (1987).

*Judgment affirmed. All the Justices concur, except Hunstein, J., who dissents.*

HUNSTEIN, Justice, dissenting.

This case marks a pivotal point in the direction this Court will follow in regard to divorce settlement agreements. Over my dissent, this Court has already allowed parties to circumvent the judicial process altogether by executing judicially-unsupervised contracts that resolve issues arising out of the dissolution of the marriage contract. *Eickhoff v. Eickhoff*, 263 Ga. 498 (435 SE2d 914) (1993). With the instant case this Court is now permitting parties, whose settlement agreement was incorporated into a divorce decree, to divest the trial court of all supervision over its decree by upholding a provision that places unfettered discretion over the unilateral termination of a judicially-sanctioned obligation, i.e., alimony, into the hands of one party to the decree. If this State wants to move in the direction of self-help divorces with the judiciary acting as a mere rubber-stamp license-fee collector, I believe it should be the Legislature that makes that decision, not this Court.

I find that the termination-upon-cohabitation provision in this case violates the public policy of this State, as expressed in our Constitution and our statutes. As the majority recognizes, the provision results in an implied waiver both of venue rights, see Art. VI, Sec. II, Par. I of the Georgia Constitution (1983), and jury trial rights, see Art. I, Sec. I, Par. XI (a), even though the contract fails to reflect that such waiver was "clearly intended and expressed by the person so waiving." *Garcia v. Garcia*, 232 Ga. 869, 871 (209 SE2d 201) (1974).[1] The provision directly contradicts the Legislature's mandate set forth in OCGA § 19-6-19 (b).[2] Last, but not least, the provision violates

---

[1] Ironically, the majority allows an *implied* pre-litigation waiver of the right to a jury trial in this divorce settlement agreement, although rejecting in purely commercial contracts those provisions which *explicitly* waive that right. See *Ekereke v. Obong*, 265 Ga. 728 (462 SE2d 372) (1995); *American Southern Financial v. Yang*, 264 Ga. 513 (448 SE2d 450) (1994); *Bank South, N.A. v. Howard*, 264 Ga. 339 (444 SE2d 799) (1994).

[2] The termination-upon-cohabitation provision conflicts with OCGA § 19-6-19 inasmuch as that statute requires the alimony-paying spouse to file a modification action "under the same rules of procedure applicable to divorce proceedings," id. at (a); authorizes jury trials in modification actions, upon proper demand, see *McElroy v. McElroy*, 252 Ga. 553 (1) (314 SE2d 893) (1984); recognizes that cohabitation is merely a *ground* to modify alimony and disallows automatic termination or reduction of the alimony obligation, see *Allen v. Allen*, 265 Ga. 53 (2) (452 SE2d 767) (1995); and prohibits unilateral termination of alimony upon a

public policy by depriving the courts of their duty to oversee modification of their judgments.

While this Court has a long history of authorizing and, indeed, strongly encouraging the private settlement of family affairs, see, e.g., *Trammell v. West*, 224 Ga. 365 (1) (162 SE2d 353) (1968), we have not heretofore approved a divorce settlement agreement provision which divests the judiciary of its discretion, implicates constitutional rights, and conflicts with express statutory provisions. None of the case law cited by the majority justifies or supports its approval of this provision.[3]

Accordingly, while I concur in the affirmance of the one issue properly before the trial court, namely, the finding that Ralph Quillen was not in wilful contempt of court, I would reverse the trial court's ruling retroactively terminating Ralph Quillen's alimony obligation and would require him to file a modification action in the proper venue pursuant to OCGA § 19-6-19, with Elaine Quillen entitled, upon proper request, to a jury trial on the cohabitation issue.

DECIDED OCTOBER 23, 1995.

*Garland & Milam, Richard G. Milam,* for appellant.
*Smith, Welch & Studdard, J. Mark Brittain,* for appellee.

claim of cohabitation. *Hendrix v. Stone,* 261 Ga. 874 (412 SE2d 536) (1992).

[3] The majority relies upon footnoted dicta in *Kent v. Kent,* 265 Ga. 211 (452 SE2d 764) (1995), a case in which the alimony-paying spouse did file, properly, a modification action to terminate his support payments to his ex-wife on the basis of her alleged cohabitation with a third party. Although the majority cites other cases in which this Court has approved some self-executing future modification provisions, the provisions in those cases are clearly distinguishable, in that those provisions were set forth so explicitly that subjective application was eliminated and the consequences thereof could be reviewed by the trial court before the provision was incorporated into the divorce decree. See, e.g., *Weaver v. Jones,* 260 Ga. 493 (3) (396 SE2d 890) (1990) and *Pearce v. Pearce,* 244 Ga. 69 (257 SE2d 904) (1979) (inversion clause cases where change was not as to amount of support but only as to person responsible for making the payment); *Perry v. Perry,* 265 Ga. 186 (454 SE2d 122) (1995) and *Cabaniss v. Cabaniss,* 251 Ga. 177 (1) (304 SE2d 65) (1983) (escalation clause cases where fixed base amount of support was awarded and variable future award was made contingent upon objective, specified changes). See also *Fender v. Fender,* 249 Ga. 765 (294 SE2d 472) (1982) (defining scope of modification actions).