**In the Matter of Eddie Lee
GRAHAM, Debtor.**

**Harry M. LEAGUE, Plaintiff,**

v.

**Eddie Lee GRAHAM, Defendant,**

v.

**U.S. POSTAMATIC, INC. and Herbert M.
Schwartz, Third–Party Defendants.**

**Bankruptcy No. A91–71114–WHD.
Adv. No. 92–6311A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 16, 1996.

---

**1.** The instant case is governed by the 1994 Act, as it was filed on April 5, 1995.

Eddie Lee Graham, Acworth, Georgia, pro se.

Stephen C. Steele, J. Brian O'Neil, Moore & Rogers, Marietta, Georgia, for Plaintiff, Harry M. League.

J. Timothy White, Varner, Stephens, White & Humphries, Atlanta, Georgia, Jerry B. Blackstock, C. Scott Greene, Christopher P. Galanek, Powell, Goldstein, Frazer & Murphy, Atlanta, Georgia, for Third–Party Defendants, Herbert M. Schwartz and U.S. Postamatic, Inc.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on two related motions. First, Harry M. League (hereinafter "the Plaintiff") has presented the Court with a Motion for Summary Judgment on the dischargeability action which he has commenced against Eddie Lee Graham (hereinafter "the Defendant"). Also, U.S. Postamatic, Inc. and Herbert M. Schwartz (hereinafter collectively "the Third–Party Defendants" or "TPD's"), have filed a Motion for the Dismissal of the Claims of Defendant Eddie Lee Graham, seeking a release from certain third-party claims which the Defendant has filed against them in the course of defending the main action. Each of these motions constitutes a core proceeding within the Court's subject matter jurisdiction, *see* 28 U.S.C. § 157(b)(2)(A) & (O), and the Court will resolve the two collectively in accordance with the following reasoning.

### FINDINGS OF FACT

This adversary proceeding arises from the Defendant's pre-bankruptcy involvement in the activities of U.S. Postamatic, Inc., a corporation whose primary business appears to have been selling coin-operated scales and related franchises to would be investors.[1] After expending over $440,000.00 on purchases from the Postamatic product line, the Plaintiff filed a claim in the Superior Court of Cobb County, Georgia, *U.S. Postamatic v. League*, Civil Action File No. 110373–18, alleging inter alia that the Defendant had made fraudulent statements to induce his participation in the scale-peddling venture. Although the named defendants to that action included the Defendant, U.S. Postamatic, Inc., Herbert M. Schwartz and a variety of other individuals, each party settled out of court, save the Defendant.

Upon the Defendant's filing of a Chapter 11 petition, the Plaintiff commenced the instant adversary proceeding to determine the dischargeability of the contingent debt owed to it by the Defendant. The Debtor responded to the adversary case by filing complaints against the Third–Party Defendants, attempting to assert a right of indemnification from those parties. Given the pending nature of the state court action, however, this Court held all matters from the adversary proceeding in abeyance, lifting the automatic stay so as to allow the state court suit to proceed to judgment.

Although the Defendant initially appears to have actively participated in the state court action, he subsequently ceased to do so. Ultimately, he fired the attorney representing him and refused to offer any further opposition to the Plaintiff's case. Through an Order dated August 11, 1995, Judge Kreeger entered a default judgment against him in the amount of $1,517,566.32.

Their state court litigation concluded, the parties then returned their attention to the dischargeability proceeding initiated with this Court. In keeping with his course of conduct from that prior action, however, the Defendant again refused to participate. Although notified of his deposition by the Third Party Defendants, the Defendant did not appear. Notwithstanding the filing of the Plaintiff's present Motion for Summary Judgment, the Defendant did not file any responsive opposition. Furthermore, despite the repeated attempts of his counsel to contact him regarding the adversary case, the Defendant refused to respond.

In light of the Defendant's specific disregard of their deposition notices and his gen-

---

1. It appears that the Defendant owned and operated a sole proprietorship known as Graco, Inc., which manufactured the coin-operated scales. U.S. Postamatic, however, was the only customer of the Graco corporation, and the two companies jointly marketed the scales to third party purchasers. Furthermore, at least in the context of the company's dealings with the Plaintiff, the Defendant appears to have acted as a sales representative for U.S. Postamatic, Inc.

eral obstructionism in this case, the Third Party Defendants have presented the Court with their Motion for the Dismissal of the Claims of Defendant Eddie Lee Graham. In substance, this motion relies upon the provisions of Federal Rule of Civil Procedure 37(d) for the proposition that the Defendant's third party complaint against them should be dismissed by the Court as a sanction for his non-compliant conduct.

The Defendant's non-participation also forms the crux of attention in the Plaintiff's Motion for Summary Judgment. Specifically, the Court must determine if, notwithstanding its entry by default, the judgment entered by the state court should collaterally estop further litigation of the dischargeability question under 11 U.S.C. § 523(a)(2)(A). According to the Plaintiff, the Eleventh Circuit's recent holding in *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush )*, 62 F.3d 1319 (1995), resolved that question in his favor. As such, he contends that the Court should grant him Summary Judgment.

### I. The Plaintiff's Motion for Summary Judgment.

#### A. The Summary Judgment Standard.

In accordance with Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, this Court will grant a motion for summary judgment only in the absence of any material issue of fact so as to make the movant entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant has the burden of establishing that no such factual issue exists, *Id.* at 324, 106 S.Ct. at 2553, and the Court will read the opposing party's pleadings liberally. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As a drastic remedy, summary judgment only will be granted when there is no room for controversy. *United States v. Earhart (In re Earhart )*, 68 B.R. 14, 15 (Bankr.N.D.Iowa 1986); *Sell v. Heath (In re Heath )*, 60 B.R. 338, 339 (Bankr.D.Colo.1986).

Additionally, the pertinent local rules for the Northern District of Georgia, also appli-

cable to bankruptcy proceedings, act to give notice to the parties that a motion will be ready for determination on the merits twenty days from the date of service of the motion. LR 220–1(b)(1) (N.D.Ga.) (applicable to bankruptcy proceedings pursuant to BLR 705–2 (N.D.Ga.)); *see Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir.1988); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538 (9th Cir.1988). If no response or other opposition is filed, the Court will deem the facts as set forth in the movant's pleadings admitted. *Kelly v. United States*, 924 F.2d 355 (1st Cir.1991); *Louisiana Hydrolec*, 854 F.2d at 1545; *Ellenberg v. Mercer (In re Home Co.)*, 108 B.R. 357 (Bankr.N.D.Ga.1989) (Cotton, B.J.). Finally, the Court will examine the record to determine whether the movant's motion and supporting pleadings provide a sufficient legal basis which would entitle the movant to judgment. *Dunlap*, 858 F.2d at 632; *Kelly*, 924 F.2d at 358. If the movant has set forth a sufficient legal basis, judgment is proper. *Id.*

#### B. Dischargeability Under Code Section 523(2)(A).

As to those debts which a debtor may have incurred through some scheme of fraudulent activity, the Bankruptcy Code provides:

(a) A discharge under section 722, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor of any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud

\* \* \* \* \* \*

11 U.S.C. § 523(a)(2)(A). Through this provision, the Code offers a means of denying those individuals who do not qualify as "honest but unfortunate debtors" the benefits of a fresh start. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Like other exceptions to discharge, however, the provisions of section

523(a)(2)(A) warrant narrow construction. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986).

 In practice, the creditor bears the burden of establishing non-dischargeability under section 523(a)(2)(A). *Hunter,* 780 F.2d at 1579. Specifically, the creditor must establish by a preponderance of the evidence that:

(1) the debtor made a false representation with the purpose and intention of deceiving the creditor;

(2) the creditor relied upon the debtor's representation;

(3) such reliance by the creditor was justifiable;

(4) the creditor suffered a loss as a result of that reliance.

*See City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277, 279–84 (11th Cir.1995); *see also Grogan,* 498 U.S. at 285–90, 111 S.Ct. at 658–61; *Signet Bank v. Keyes,* 959 F.2d 245, 1992 WL 66723 (10th Cir.1992); *Mfr's. Hanover Trust Co. v. Ward (In re Ward),* 857 F.2d 1082, 1082 (6th Cir.1988); *Hunter,* 780 F.2d at 1579.

*C. The Impact of Prior Judgments Upon Non–Dischargeability Proceedings in Bankruptcy.*

 Creditors may find their evidentiary burdens substantially lessened where a prior judgment serves to dispose of those issues material to a section 523(a)(2)(A) proceeding. Although the doctrine of claim preclusion does not apply to dischargeability proceedings in bankruptcy, *Brown v. Felsen,* 442 U.S. 127, 132–37, 99 S.Ct. 2205, 2209–12, 60 L.Ed.2d 767 (1979), the related doctrine of collateral estoppel, or issue preclusion, may step in to prevent re-litigation of those individual matters which actually and necessarily were decided as part of a prior court action. *Grogan v. Garner,* 498 U.S. 279, 284–85, 111 S.Ct. 654, 658–59, 112 L.Ed.2d 755 (1991). At the same time, however, courts have noted that judgments by default normally should not collaterally estop subsequent litigation because such judgments cannot properly be characterized as the product of "actual litigation." *See Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981); *United States v. Gottheiner (In re Gottheiner),* 703 F.2d 1136, 1140 (9th Cir.1983); *see also* Restatement (Second) of Judgments § 27 (1982).

In the wake of this apparent uncertainty, the Plaintiff draws the Court's attention to the recent case of *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush),* 62 F.3d 1319 (1995), wherein the Eleventh Circuit held that a default judgment for fraud, entered as a discovery sanction by a federal district court, should collaterally estop litigation of the dischargeability question in subsequent bankruptcy proceedings. *Id.* at 1325. The Plaintiff points out that the *Bush* decision turned on a finding that despite ample opportunity to participate in the prior action, the *Bush* debtor had abstained to the point of becoming an obstacle to the litigation. *Id.* at 1324. Noting the analogous facts which exist in the present case, the Plaintiff then concludes that the *Bush* case presents directly applicable and binding authority on the matter at hand.

As logically appealing as this argument might appear, however, the Plaintiff fails to take into account one important factor. In its *Bush* holding, the Eleventh Circuit dealt with a prior judgment by a *federal court* and consequently that court applied the *federal doctrine of collateral estoppel.* It did not make any reference to the preclusive effect of state court default judgments of fraud.[2]

---

2. Indeed, in a footnote to its opinion, the *Bush* court took the following steps to distinguish the case before it from that involving a state court judgment:

> Where the prior default judgment was rendered in state court, a different analysis may be required. In a recent opinion, the Bankruptcy Appellate Panel ("BAP") of the Ninth Circuit Court of Appeals held that 28 U.S.C. § 1738 and the Supreme Court's decision in

*Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) require a bankruptcy court to apply Florida law to determine the preclusive effect of a Florida default judgment in a dischargeability proceeding. *In re Nourbakhsh,* 162 B.R. 841 (9th Cir. BAP 1994). The BAP reasoned that Section 1738 requires a bankruptcy court to apply the full faith and credit doctrine to dischargeability issues such

Here, the Court finds itself faced with a prior state court judgment and, as such, the *Bush* precedent does not offer direct authority.[3] State court decisions "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Furthermore, this mandate of "full faith and credit" applies in dischargeability proceedings just as it does in any other court action. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 381, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985); *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982) ("it has long been established that section 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state court judgments"); *see also Nourbakhsh v. Gayden (In re Nourbakhsh),* 162 B.R. 841, 843 (Bankr. 9th Cir.1994); *Wright v. McIntyre (In re Wright),* 57 B.R. 961, 963 (Bankr.N.D.Ga. 1986) (Drake, B.J.) ("the collateral estoppel

effect of the Superior Court judgment is governed by the principles of full faith and credit set forth in 28 U.S.C. § 1738"). Thus, rather than turning to the federal standard for collateral estoppel enunciated in *Bush,* the Court must determine the degree of issue preclusion arising from the judgment entered by the Cobb County Superior Court under the standards of the State of Georgia.

### D. Default Judgments and Collateral Estoppel under Georgia Law.

Under Georgia law,[4] a theory of issue preclusion, known as estoppel by judgment, applies when the parties or their privies necessarily must have adjudicated the same issue in order for the previous judgment to have been entered, or when that matter actually was litigated and determined. *Kent v. Kent,* 265 Ga. 211, 211–212, 452 S.E.2d 764 (1995) (citing *Boozer v. Higdon,* 252 Ga. 276, 278, 313 S.E.2d 100 (1984)); *Dept. of Human Resources v. Fleeman,* 263 Ga. 756, 757, 439 S.E.2d 474 (1994); *Oxendine v. Elliott,* 170 Ga.App. 422, 431, 317

as fraud; and the Supreme Court held in *Marrese* that this statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered" (quoting *Marrese* 470 U.S. at 380, 105 S.Ct. at 1332). Finding that in Florida "a default judgment conclusively establishes between the parties ... the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment ...," (citing *Perez v. Rodriguez,* 349 So.2d 826, 827 (Fla.Dist.Ct.App.1977)), the BAP found that "a Florida State Court would hold that the entry of a default judgment is tantamount to a dispute that has been 'actually litigated.'" *Nourbakhsh,* 162 B.R. at 844. Under *Marrese,* the BAP held that a bankruptcy court must give preclusive effect to a Florida default judgment. Another panel of this court has stated that the collateral estoppel law of the state rendering the judgment must be applied in a dischargeability proceeding. *See In re St. Laurent,* 991 F.2d 672, 675–76 (11th Cir.1993). Because we consider the preclusive effect of a prior federal court default judgment in the instant case, we do not reach the issue of whether *Marrese* requires that a Florida default judgment be accorded preclusive effect in a bankruptcy discharge proceeding. *Bush,* 62 F.3d at 1323 n. 6. Given this concerted effort at qualification by the Court of Appeals, the *Bush* opinion hardly should be read as dispositive of the issue before this Court.

3. The Court finds it important to note, however, that the prerequisites under Georgia law for the application of collateral estoppel closely track the federal standard for that doctrine. *See RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1290 (5th Cir.1995); *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1360 (11th Cir. 1985). As such, the Eleventh Circuit's *Bush* holding still may offer instructive and persuasive authority to those attempting to interpret a similar fact pattern under the Georgia standard. *See Ewing v. Johnston,* 175 Ga.App. 760, 763, 334 S.E.2d 703 (1985) ("Although federal civil procedure with respect to default judgments is not the same as the Georgia CPA, they are substantially similar and it is of assistance to us to see how they view a default ...").

4. In particular, the Georgia Code provides:
 A judgment of a court of competent jurisdiction shall be conclusive between the same parties or their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.
 O.C.G.A. § 9–12–40 (1993). "Collateral estoppel in Georgia stems from this general principle of law, as state courts have used the conclusive nature of a judgment to preclude relitigation in a future court action of those matters already put in issue and decided." *Moore v. Gill (In re Gill),* 181 B.R. 666, 671 (Bankr. N.D.Ga.1995) (Drake, B.J.).

S.E.2d 555 (1984); *Blakely v. Couch,* 129 Ga.App. 625, 626, 200 S.E.2d 493 (1973). Implicit in this standard is said to be a requirement that the judgment must "have been based, not merely on technical grounds, but at least in part on the merits." *Usher v. Johnson,* 157 Ga.App. 420, 421–22, 278 S.E.2d 70 (1981) (citing *Morris v. Ga. Power Co.,* 65 Ga.App. 180, 187, 15 S.E.2d 730 (1941)). A default judgment, however, will qualify as such a "judgment on the merits" for the purposes of the Georgia standard. *See Butler v. Home Furnishing Co.,* 163 Ga.App. 825, 825–26, 296 S.E.2d 121 (1982); *Fierer v. Ashe,* 147 Ga.App. 446, 249 S.E.2d 270 (1978). Thus, provided that the judgment of the Cobb County Superior Court satisfies the basic pre-requisites of Georgia's collateral estoppel doctrine, its "default" nature should pose no barrier to its preclusive impact.

▮ Turning, therefore, to the substance of the doctrine, the Court notes that Georgia case law breaks the collateral estoppel doctrine into a four-part test. *Kent,* 265 Ga. at 211–12, 452 S.E.2d 764. First, there must exist an identity of issues between the first and second actions. *Department of Human Resources v. Fleeman,* 263 Ga. 756, 757, 439 S.E.2d 474 (1994); *Norris v. Atlanta & West Point R. Co.,* 254 Ga. 684, 685, 333 S.E.2d 835 (1985); *Oxendine v. Elliott,* 170 Ga.App. 422, 431, 317 S.E.2d 555 (1984); *Greene v. Transport Ins. Co.,* 169 Ga.App. 504, 504–05, 313 S.E.2d 761 (1984); *Klosterman v. Tudor,* 170 Ga.App. 4, 5, 315 S.E.2d 920 (1984). Second, the duplicated issue must have been actually and necessarily litigated in the prior court proceeding. *See Boozer v. Higdon,* 252 Ga. 276, 278, 313 S.E.2d 100 (1984); *Swinney v. Reeves,* 224 Ga. 274, 276, 161 S.E.2d 273 (1968); *Buie v. Waters,* 209 Ga. 608, 610, 74 S.E.2d 883 (1953); *Gregory v. J.T. Gregory &*

*Son, Inc.,* 176 Ga.App. 788, 790, 338 S.E.2d 7 (1985); *see also Walton Motor Sales, Inc. v. Ross,* 736 F.2d 1449, 1455 (11th Cir.1984); *Samuel v. Baitcher (In re Baitcher),* 36 B.R. 588, 593 (Bankr.N.D.Ga.1983) (Kahn, C.J.). Third, determination of the issue must have been essential to the prior judgment. *Kent,* 265 Ga. at 212 n. 2, 452 S.E.2d 764. Finally, the party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding. *Winters v. Pund,* 179 Ga.App. 349, 352, 346 S.E.2d 124 (1986); *Watts v. Lippitt,* 171 Ga. App. 578, 579, 320 S.E.2d 581 (1984).

▮ Here, there exists an identity of issues between the state court action, which premised itself upon a fraud theory of recovery, and the section 523(a)(2)(A) dischargeability action, which hinges upon the existence of "false pretenses, a false representation, or actual fraud." To the extent that the preceding and present actions both required the traditional elements of intentional misrepresentation and detrimental reliance, they stand indistinguishable[5] for present purposes. *Grogan,* 498 U.S. at 285, 111 S.Ct. at 658–59 ("all creditors who have secured fraud judgments, the elements of which are the same as those of the fraud discharge exception, will be exempt from discharge under the collateral estoppel principle"). Furthermore, given that Georgia law recognizes a default judgment as a decision on the merits, the Cobb County Order should satisfy the second and third requirements—actual litigation and essential judgment. *See Butler,* 163 Ga.App. at 825–26, 296 S.E.2d 121; *Fierer,* 147 Ga.App. at 446, 249 S.E.2d 270; *see also Moore,* 181 B.R. at 672–75 (a judgment of fraud under Georgia law necessarily decides those issues pertinent to a claim of "actual fraud" under 11 U.S.C. § 523(a)(2)(A)).

---

**5.** The Court points out the bankruptcy court and state court standards for fraud do differ in one respect. While the Georgia action for fraud must include a requirement of "reasonable reliance" on the part of the creditor, *Armstrong Transfer & Storage Co., Inc. v. Mann Constr., Inc.,* 217 Ga.App. 538, 543, 458 S.E.2d 481 (1995), Bankruptcy Code section 523(a)(2)(A) requires the creditor to have "justifiably relied" on the misrepresentations made to him. *See Field v. Mans,* — U.S. —, 116 S.Ct. 437, 133 L.Ed.2d

351 (1995); *City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277, 279–84 (11th Cir.1995). This divergence has no effect upon the Court's present inquiry, however, because bankruptcy's "justifiable reliance" standard is broader than the "reasonable reliance" standard employed by the Georgia Courts. *Id.* at 279–84. Consequently any action constituting reasonable reliance also will give rise to a finding of justifiable reliance.

Finally, with regard to the "fair opportunity" prong, the Court notes that the Defendant had every possible chance to litigate the state action completely. With the assistance of counsel, he answered the complaint to that action and participated in discovery. Other than his own willfulness and obstructionism, nothing prevented him from arguing his case to its completion. *Compare Bush,* 62 F.3d at 1324 (treating debtor's initial representation by counsel, entry of an answer, and participation in early discovery as evidence of his opportunity to litigate), *with Watts,* 171 Ga. App. at 579, 320 S.E.2d 581 (generally referring to previous litigation opportunity as the final element in Georgia's collateral estoppel doctrine).

In sum, the Court finds that it must apply Georgia's law of collateral estoppel to previous judgments entered by a local state court. Furthermore, having evaluated the Superior Court judgment under the Georgia standard, the Court finds that its entry by default in no way lessens that decision's preclusive character. Rather, the judgment meets each of the prerequisites to collateral estoppel under Georgia law, and the Court shall treat it accordingly. In light of these considerations, summary judgment for the Plaintiff on the question of dischargeability under 11 U.S.C. § 523(a)(2)(A) is both necessary and proper.

## II. The Third–Party Defendants' Motion to Dismiss.

■ Having dealt with the consequences of the Defendant's default in state court, the Court now must turn its attention to his lack of cooperation in the instant adversary proceeding. As previously noted, the Third–Party Defendants seek dismissal of the Defendant's claims against them pursuant to Federal Rule of Civil Procedure 37(d). As made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7037, this Rule permits a court to utilize the sanctions in Rule 37(b)(2)(A), (B), and (C) when a party fails to appear before an officer designated to take a deposition after proper notice. Among those sanctions available to the Court is the option to dismiss the action. *See* FED. R.CIV.P. 37(b)(2)(C). Although such an order of dismissal under Rule 37(d) is an extreme measure, the Court has the "... discretion to dismiss a complaint where the party's conduct amounts to 'flagrant disregard and willful disobedience' of the court's discovery orders." *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir.1987) (quoting *Hashemi v. Campaigner Publications, Inc.,* 737 F.2d 1538, 1539 (11th Cir.1984)).

Having given the matter careful consideration, the Court finds the case before it to warrant the sanction of dismissal. The Third–Party Defendants scheduled a deposition of the Defendant for November 17, 1995, and properly notified him of that event. Nonetheless, he did not appear. To date, the Defendant has offered no explanation for his absence. Furthermore, this flagrant disregard for his scheduled deposition appears to form but one part of a broader obstructionist attitude which the Defendant has demonstrated in both the state and bankruptcy court litigations. Even the repeated pleas of counsel representing him have failed to generate some degree of cooperation from the Defendant in this action. (Mot. & Mem. Supp.Dism.Claim Def.Graham, Exh. A). In the context of such a pattern of blatant and willful obstructionism, the Court finds the unusual remedy of dismissal under Rule 37(d)[6] to be the appropriate measure. *See generally Beavers v. Am. Cast Iron Pipe Co.,*

---

6. As an aside, the Court believes that under these circumstances Federal Rule of Civil Procedure 41(b) provides a separate ground for dismissal. Providing for dismissal based upon a failure to prosecute, the Rule 41(b) dismissal also marks an extreme remedy. *McKelvey v. AT & T Technologies, Inc.,* 789 F.2d 1518, 1520 (11th Cir.1986). Nonetheless, the Court may employ it, on a party's motion or sua sponte, "whenever necessary to 'achieve the orderly and expeditious disposition of cases.'" *Anthony v. Marion County Gen. Hosp.,* 617 F.2d 1164, 1167 (5th Cir.1980) (quot-

ing *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). Given the Defendant's demonstrated commitment not to participate in this litigation or even to communicate with his counsel, the Court finds the Rule 41(b) dismissal appropriate. *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 241–42 (5th Cir.1980) (although an extreme remedy, the Rule 41(b) dismissal is warranted where there is a "clear record of delay or contumacious conduct").

852 F.2d 527 (11th Cir.1988); *Dorey v. Dorey,* 609 F.2d 1128 (5th Cir.1980).

### CONCLUSION

The default judgment of fraud entered against the Defendant by the Cobb County Superior Court meets the criteria of Georgia's collateral estoppel doctrine and, as such, serves to settle those issues underlying the instant section 523(a)(2)(A) dischargeability action in the Plaintiff's favor. Consequently, it is **ORDERED** that the Motion for Summary Judgment by Harry M. League (hereinafter "the Plaintiff") hereby is **GRANTED.**

Additionally, in light of the Defendant's willful failure to attend his scheduled deposition and his broader pattern of obstructionist behavior in this matter, the Court finds the unusual sanction of dismissal with prejudice to be warranted. As such it is **FURTHER ORDERED** that the Motion for the Dismissal of the Claims of Defendant Eddie Lee Graham by U.S. Postamatic, Inc. and Herbert M. Schwartz is **GRANTED.**

**IT IS SO ORDERED.**

### *JUDGMENT*

Judgment is hereby entered for the Plaintiff, **HARRY M. LEAGUE,** against the Defendant, **EDDIE LEE GRAHAM,** in the above-styled adversary proceeding in accordance with the Order of the Court entered the 16 day of January, 1996.