### 67511. OXENDINE et al. v. ELLIOTT.

McMURRAY, Chief Judge.

This convoluted case is a tort action against certain Georgia attorneys who previously had represented the different parties involved in this litigation or ancillary to it. We first examine the following uncontroverted facts.

We commence with Allan Miller, a Columbus attorney, who generally represented one Hugh Brasington during the years 1975, 1976 and probably 1977. Thereafter, he did perform certain legal services for Mr. Brasington as late as 1979. Sometime (1976) during this period he prepared a promissory note for Brasington which was executed by Charles J. Henry to Hugh Brasington, being in the amount of $315,500. In 1978 this note was assigned by Brasington to G. Roberly Elliott. Eventually, in 1979, Allan Miller began representing Charles J. Henry and also a corporation of which Henry was the sole stockholder known as Chucko, Inc., dealing with government contracts under Section 8 (a) of the Small Business Act, as amended, whereby small minority businesses might obtain government contracts. With reference to the case here the government contracts involved cleaning and allied services at Ft. Benning, Ft. Rucker and an Air Force base in Florida. The corporation (Chucko, Inc.) was incorporated with 6,000 shares of stock of which only 1,000 had been issued to Charles J. Henry.

In December of 1979 Elliott, not being able to collect the Brasington note, initiated litigation against Henry. Allan Miller, however, who represented Henry and Chucko, Inc., as general counsel, having prepared the promissory note for Brasington, felt there was a conflict of interest if he represented Henry and did not do so. In the meantime, Henry had become acquainted with James W. Oxendine, an attorney who practiced in the metro-Atlanta area with another

lawyer known as John Jay. These two lawyers also practiced together as Oxendine, Jay and Zellers, P.C., a Georgia corporation. Oxendine first became acquainted with Charles J. Henry through his connections with other Section 8 (a) contractors and first represented Henry as to a matter with the Small Business Administration in April 1979. When Allan Miller was unable to represent Henry because of the possible conflict of interest with reference to the litigation involving the promissory note which he had prepared for Brasington, the assignor of same to Elliott, James W. Oxendine became lead counsel with reference to this litigation, having also done some other legal work for Henry about November 26, 1979.

Certain properties and assets of Charles J. Henry, as well as Chucko, Inc., are here involved in this litigation. Henry and Allan Miller had several business transactions together, and property was transferred in and out of Chucko, Inc. with reference to same. In 1979 two properties located in Columbus (Estonia Street and Bowman Street) were purchased in the name of Chucko, Inc., by Miller, but when Henry had no desire to be involved in the ownership of same, these properties were placed in the name of Miller. In addition, in August 1979 Henry and Miller entered into a joint venture with another individual creating a business known as Diesel Parts. Miller borrowed certain funds allegedly to pay for supplies ordered by Diesel Parts in March 1980. Eventually, for tax purposes (a loss) this business was transferred to Chucko, Inc. which assumed and agreed to pay the indebtedness created by Allan Miller (in the nature of $5,000). Another property allegedly owned by Henry, known as Shady Oaks located in Bay County, Florida, was transferred from Henry to Chucko, Inc., which deed was recorded July 21, 1980. Henry also owned a boat jointly with one Williams on or about April 24, 1980. Henry had also purchased 808 shares of stock of American Family Corporation in December of 1978 and an additional 1,000 shares in October of 1979. On October 17, 1980, this stock was transferred on the corporate records to another. At that time the stock had a market value of approximately $7.75 per share. Henry also transferred ownership of his home (Cyprus Court) to his wife by deed, as drawn by Allan Miller as his attorney, which was filed for record July 24, 1980, and recorded July 25, 1980. On November 25, 1980, Miller, representing Henry, prepared a separation agreement with reference to Henry's marital difficulties with his wife. A quitclaim deed was thereafter prepared with reference to the home (which was to be transferred by the separation agreement although already having been recorded by deed to the wife in July of 1980) because of discrepancies in the description. This quitclaim deed was recorded January 16, 1981.

In the meantime, the Section 8 (a) minority business, Chucko, Inc., having not paid certain FICA taxes, FUTA taxes and withhold-

ing taxes in the amount of $157,000 was in trouble with the Internal Revenue Service, and Allan Miller, James W. Oxendine and others in the corporation made efforts to borrow funds in order to pay same, otherwise the contracts with the federal government would be lost. The bank in order to make the loan required James W. Oxendine to endorse a note of Chucko, Inc. (also guaranteed by Allan Miller) in the amount of $165,000 of which much of the funds were used to pay the taxes due the Internal Revenue Service. Oxendine became the special assistant to the president of Chucko, Inc. in order to see that the indebtedness due the bank was repaid, the bank also having been assigned the government contracts in order to see that this note was paid promptly and on time. In addition, Oxendine had Henry execute a note in his favor on November 13, 1980, for $150,000, ostensibly for services rendered and as further security to Oxendine. Miller drew the note and a security agreement whereby the thousand shares of stock owned by Henry of Chucko, Inc. were assigned and turned over to Oxendine as security, as well as many other personal items owned by Henry such as chinaware, boats and jewelry, although it is uncertain that Oxendine ever had actual possession of any property other than the stock certificate. Same was dated November 13, 1980, and a financing statement was recorded November 18, 1980, with reference to all of these items.

On or about January 5, 1981, the suit filed by G. Roberly Elliott against Charles J. Henry on December 3, 1979, was tried and on January 9, 1981, resulted in a verdict and judgment in favor of Elliott in the amount of $313,500. This judgment was subsequently amended on February 16, 1981, to add interest and attorney fees for a total judgment of $467,617.

On February 23, 1981, Charles J. Henry, represented by Allan Miller and another lawyer named Kirk, filed for bankruptcy. In addition to the judgment obtained by Elliott in the amount of $467,617 the bankruptcy proceedings showed that Henry was indebted in a considerable sum to Chucko, Inc., and Miller made a claim for Chucko, Inc., in the sum of $58,000 and he personally made a claim against Henry in the amount of $12,000. It also showed the claim of James W. Oxendine as to the $150,000 note. We note here that eventually Chucko, Inc. paid all the existing indebtedness to the bank as to the notes endorsed either by Oxendine or Miller in the past with reference to the past due taxes, although Chucko, Inc. owed additional taxes at the time of Henry's bankruptcy.

As a result of the bankruptcy case, the trustee was only able to obtain cash funds in the amount of $25,000 by reason of the bankrupt's agreement to pay same to release his personal property and for the release of his property and stock in Chucko, Inc. inasmuch as the government contracts could not be renegotiated by anyone other than

the minority owner involved. No one else sought to buy same, and Oxendine waived his claimed mortgage on the properties. G. Roberly Elliott as a judgment creditor eventually received the sum of $17,842.81 from the bankruptcy trustee. Henry was eventually discharged. His discharge was contested by Elliott, but Elliott's objections to the discharge and other actions by the trustee were unsuccessful.

On September 1, 1982, G. Roberly Elliott filed this tort action naming as defendants Chucko, Inc., a Georgia corporation with registered office in Muscogee County, Georgia; James W. Oxendine and John Jay as residents of DeKalb County, Georgia; Oxendine, Jay and Zellers, P.C., and Oxendine, Jay and Cobb, P.C., Georgia corporations with registered offices located in Gwinnett County, Georgia; and Charles J. Henry, a resident of Florida. Henry had moved to Florida following his marital difficulties. The complaint alleges that the defendants conspired and colluded and acted willfully, maliciously and in concert in an attempt to hinder, delay or defraud plaintiff of his rights to collect a just debt owed to him by the defendant Charles J. Henry, causing him to sustain damages thereby with reference to the promissory note assigned to him by Hugh Brasington (pursued to judgment by him), as a result of which he had been unable to collect the full amount owed to him by defendant Henry. In Count 1 the plaintiff contends the defendants, acting in concert with each other, transferred with insufficient and inadequate consideration certain ownership interests in various pieces of real estate, personal property and choses in action (much of which is shown above in the admitted facts) to such people as Charles J. Henry's wife and daughter, and others, all such transfers being allegedly done with the intent and with the purpose of hindering, delaying or defrauding the rights of plaintiff to collect the lawful debt owed to him by the defendant Charles J. Henry. The alleged proximate result was the breach of a statutory duty not to injure plaintiff as set out in former Code § 105-103 (now OCGA § 51-1-6, effective November 1, 1982). The breach caused plaintiff to sustain damages in the approximate amount of $467,716, and the acts of the defendants were alleged to be willful, malicious and wanton by reason of which plaintiff was entitled to recover punitive damages in the amount of $500,000. That is, it was therein alleged in substance that the defendants acted in concert and in an unlawful conspiracy for the sole purpose and with the specific intent to hinder, delay or defraud plaintiff as a creditor of the defendant Charles J. Henry, to prevent plaintiff from collecting the lawful debt. In Count 2, by reason of the unlawful conspiracy plaintiff contends he sustained damages in the amount of $416,716 and was entitled to recover that amount, plus punitive damages in the amount of $500,000. In Count 3 he sought, in addition to the other sums, ex-

penses of litigation including attorney fees, seeking judgment, jointly and severally, as to Counts 1 and 2 in the amount of $967,716, or a total of $1,935,432, plus reasonable attorney fees and interest.

The defendants answered separately, each denying the complaint. The defendants James W. Oxendine and John Jay expressly reserved all defenses as to the jurisdiction and venue, contending that venue was improper. Their counterclaims asserted a special appearance with an express reservation of all defenses as to jurisdiction and venue and subject to the court finding jurisdiction and venue proper. Charles J. Henry's answer asserted essentially the same defenses as the others and alleged, among other things, his discharge in bankruptcy had discharged the judgment debt owed by defendant Henry to the plaintiff which precluded the plaintiff from further efforts to collect the judgment. He also sought damages by way of a counterclaim against the plaintiff.

A joint stipulation for dismissal with prejudice of the claims and counterclaims as to the plaintiff, defendants and counterclaimants, Henry and Chucko, Inc., was thereafter entered, together with an order of court dismissing the same with prejudice as to the defendants Henry and Chucko, Inc.

Plaintiff then moved for an order making Allan Miller a party defendant, being a resident of Muscogee County, Georgia. The court thereafter ordered Miller be made a party defendant, and he was served with the amended complaint with reference to the actions against the other attorneys. Defendant Miller filed his answer, defenses and counterclaim, as amended, in addition to a motion to dismiss on the grounds of insufficiency of process and insufficiency of service of process, improper venue, and alleging further that the plaintiff had released and discharged two of the alleged joint tortfeasors who were previously designated as parties defendant thereby releasing all tortfeasors.

Motions for summary judgment by all the defendants were made, heard and denied. The case proceeded to trial. The jury returned a verdict in favor of the plaintiff in the amount of $546,317.75 compensatory damages against James W. Oxendine, John Jay and Allan Miller; attorney fees and expenses of litigation in the amount of $40,646.93; and $4.5 million punitive damages. The jury also found in favor of the corporate defendants Oxendine, Jay and Zellers, P.C., and Oxendine, Jay and Cobb, P.C. Judgment was rendered thereafter against all three individual defendants James W. Oxendine, John Jay and Allan Miller for the sum of $546,317.75 actual damages, $40,646.93 attorney fees and expenses of litigation, and $4.5 million exemplary damages with interest thereon as provided by law. Judgment was likewise entered for the defendant corporations by the final judgment. The individual defendants appeal following the denial of

their motion for judgment notwithstanding the verdict and in the alternative for a new trial. *Held*:

1. First of all we must examine the pleadings in the light of the evidence presented with reference to plaintiff's claim that the defendants conspired and colluded and acted willfully, maliciously and in concert with their co-conspirator (their former employer or client) to damage him. The plaintiff, a judgment creditor of the alleged co-conspirator Henry (no longer a defendant in the case) had a judgment of $416,716 against Henry and after Henry went into bankruptcy obtained only the sum of $17,842.81 from the bankruptcy trustee which was derived from a $25,000 payment by the bankrupt to obtain the release of certain personal property including the stock in Chucko, Inc. through which the bankrupt had operated the Section 8 (a) small business. These government contracts are available only to minority businesses. Thereafter, plaintiff brought this action against some of the attorneys who represented the alleged co-conspirator bankrupt in which he claims these defendants aided and abetted the alleged co-conspirator (Henry) in hindering, delaying and defrauding this plaintiff of his right to collect the debt owed to him. The judgment debt was proven, and plaintiff sought to show the defendants had aided and abetted the alleged co-conspirator in transferring, with insufficient and inadequate consideration, certain ownership interest in various property to others. We must review the various transactions offered in evidence here to determine damages, if any, as well as whether or not any evidence was produced to show the transfers of these assets were to defraud the plaintiff. Also, we have for decision whether or not previous litigation involving the plaintiff creditor and the bankrupt in the federal courts may have barred this action of conspiracy. We likewise have to determine whether or not the action of the creditor-plaintiff in seeking to set aside the alleged illegal conveyances of the alleged co-conspirator (Henry, an original defendant, later dismissed with prejudice), in contesting the position of the trustee in regard thereto and the denial of his objection to the proposed sale (or release) of the bankrupt's assets upon payment into the bankruptcy court of $25,000, which action was approved by the bankruptcy court and later affirmed by the federal district court, results in a res judicata ruling, estoppel by judgment or collateral estoppel, any one of which would bar this action requiring a reversal of the trial court in denying defendants' motion for judgment notwithstanding the verdict.

(a) In regard to the defendant Miller, general counsel of the Section 8 (a) contractor Chucko, Inc. and also counsel to the alleged co-conspirator Henry, it was shown that he was earlier involved in several transactions with the alleged co-conspirator in the purchase of property and in opening the business known as Diesel Parts. The evi-

dence shows that in 1979 two properties located in Columbus (here identified as the Estonia Street and Bowman Street properties) were purchased by him in the name of Chucko, Inc. for himself and Henry. However, it is not disputed that when Henry had no desire to be involved in the ownership of same these properties were transferred to Miller. We note here that at this particular point in time plaintiff's suit on the promissory note was not even filed against Henry (suit filed December 3, 1979), and the evidence does not disclose that Henry or Chucko, Inc. were solvent or insolvent at the time that Miller, Henry and Chucko, Inc. were involved in the purchase of these two properties. Further, the properties were not transferred from Henry to Miller but from Chucko, Inc. to Miller. Objection was made that the evidence with reference to these two properties was in no wise relevant to the tort action against the defendants. We fully agree. The trial court erred in failing to exclude this evidence from consideration by the jury, even though the plaintiff contends this evidence showed a pattern of conspiracy by and between the defendants with reference to the various business transactions under consideration.

In considering the question of damages there was no showing whatsoever as to the value of these properties even if it be said that the corporate veil was penetrated by and between the alleged co-conspirator Henry and Chucko, Inc. of which he was sole stockholder. As there was no evidence of value as to the property transferred (Estonia Street and Bowman Street) there can be no finding that it was transferred for insufficient and inadequate consideration so as to prove damages in this case.

(b) We next consider the transfer or sale of 1,808 shares of stock of American Family Corporation by the alleged co-conspirator Henry to another on October 17, 1980. Plaintiff did show a value for such stock as being approximately $7.75 per share at the time of the transfer. The evidence fails to make a showing however that Henry did not receive value for said stock, and the only connection that the evidence has to any of these defendants is that defendant Miller did call the stock transfer agent with reference to the fact that the stock certificates were missing or lost. The transfer was later made on the books of the corporation but in no wise involved any of the defendants. Again, this evidence does not disclose that Henry transferred the ownership of this stock for insufficient and inadequate consideration. No damage to the plaintiff at the point in time when this stock was either transferred or sold to another, apparently a bona fide purchaser for value, has been shown.

(c) With reference to the joint venture, Diesel Parts, the evidence discloses that Henry, Miller and another created this business. The testimony shows that Miller later borrowed certain funds in order to

pay for supplies for Diesel Parts in March of 1980, and eventually he transferred his interest to Chucko, Inc. which assumed and agreed to pay the indebtedness created by Miller (approximately $5,000). Other testimony discloses that the purpose of transferring Diesel Parts to Chucko, Inc. was to show a loss by Chucko, Inc., but in fact the transfer of Diesel Parts to Chucko, Inc. was not necessary as Chucko, Inc. already had a tax loss for that year. Plaintiff seeks to infer that the assumption of the indebtedness created by Miller in the nature of $5,000 could be characterized as paying for Miller's share of the joint venture. However, Miller's testimony refutes this. No testimony was produced to show the transfer of this property was to defraud the creditor.

(d) We next examine the transfer of the alleged co-conspirator Henry's ownership in his home (Cypress Court) to his wife, the deed thereto being prepared by Miller and filed July 24, 1980, and recorded July 25, 1980. With reference to this transfer we likewise consider a separation agreement by and between Henry and his wife to settle their marital difficulties in which he agreed to transfer the home which in fact had already been transferred to her at the time this instrument was prepared and executed. Thereafter, a quitclaim deed was prepared because of discrepancies in the description and was recorded January 16, 1981, after plaintiff obtained judgment against the defendant Henry. Again, no valuation was produced as to Cypress Court, and this transfer reflects no damages by reason of the transfer of same to defendant Henry's wife whether or not it was for any consideration other than a marital settlement.

(e) Considerable testimony was offered as to the Shady Oaks property located in Bay County, Florida. This property was purchased by Henry and another and thereafter transferred to Chucko, Inc. which deed was recorded July 21, 1980. Testimony was offered, which was not refuted, that the funds for the purchase of this property came from Chucko, Inc., which funds were also shown as loans from Chucko, Inc. to defendant Henry. Various sums were mentioned with reference to this property as being valued on the corporate books by the corporation at $315,000, that is, as having a fair market value of that amount. However, in the bankruptcy proceedings there was an appraisal giving it a value of $150,000. Nevertheless, there was no evidence in the record as to its value so as to reflect any damages to the plaintiff. Indeed, at the time of the bankruptcy proceeding there was testimony offered that the liabilities of Chucko, Inc. exceeded its assets and in reality its stock had no value primarily because its government business contracts could only be carried on by a minority businessman and because of corporate debts including taxes due. Again we find no evidence with reference to this property which could be characterized as damages resulting from the defendants acting in con-

cert to hinder, delay or defraud this plaintiff from which the jury could assess damages.

(f) The remaining testimony we consider here has reference to plaintiff's attempt to levy upon the stock (1,000 shares) of Chucko, Inc. while in the physical possession of defendant James W. Oxendine who had a security interest in same. The evidence disclosed that defendant Oxendine, as endorser of a note in the amount of $165,000 for the purpose of protecting the business (Chucko, Inc.) which owed considerable taxes to the Internal Revenue Service, became an officer of the corporation as special assistant to the president with an assignment of the government contracts to the bank for the purpose of seeing that this indebtedness was repaid to the bank and which was repaid over a period of time. Oxendine also required the alleged co-conspirator Henry to assign and turn over to him as security the stock certificate representing the 1,000 shares and other personal items owned by Henry such as chinaware, boats and jewelry. Defendant Oxendine never received any of these items even though he made a claim against defendant Henry at the bankruptcy proceedings later voluntarily waiving his claim. All of this property was released to Henry, the bankrupt, upon the payment of the sum of $25,000 which was accepted by the bankruptcy trustee. Further, none of these items have been valued so as to reflect any transfer to others to delay and defraud creditors in any definite amount.

Consideration of the above evidence fails to prove any of the value of the property transferred, and the plaintiff has utterly failed to prove damages with reference to the judgment awarded by the jury. Plaintiff failed to prove the value of any specific assets transferred, if they in fact be assets instead of liabilities. Accordingly, plaintiff has failed to make a case for recovery of damages. See *Ayers v. Mobley*, 163 Ga. App. 239, 240-241 (2) (293 SE2d 470). The question of damages cannot be left to speculation, conjecture and guesswork. See *Smith v. Barfield*, 157 Ga. App. 231, 233 (276 SE2d 899); *Tendrift Realty Co. v. Hayes*, 140 Ga. App. 896 (232 SE2d 169). The defendants having moved for judgment notwithstanding the verdict because no damages were proven, the same was meritorious requiring a reversal here.

2. OCGA § 9-12-40 (formerly Code § 110-501) specifically provides that a judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside. Here the defendants contend that the plaintiff's action in the case sub judice is barred by the doctrines of res judicata, collateral estoppel and/or estoppel by judgment with reference to the judgment in the bankruptcy proceeding which was ad-

verse to the plaintiff in the bankruptcy court and affirmed by the federal district court. See in this connection *Fed. Deposit Ins. Co. v. Windland Co.*, 245 Ga. 194, 195 (264 SE2d 11); *Chilivis v. Dasher*, 236 Ga. 669, 670-671 (225 SE2d 32); *Sumner v. Sumner*, 186 Ga. 390 (2) (197 SE 833). The bankruptcy proceeding involved only the parties plaintiff and the alleged co-conspirator Henry, but did not involve the other alleged conspirators (the defendants herein). However, estoppel by judgment (also known as collateral estoppel) is a doctrine applying to a judgment "as to such matters within the scope of the previous pleadings as necessarily had to be adjudicated in order for the previous judgment to be rendered, or as to such matters within the scope of the pleadings as might or might not have been adjudicated, but which are shown by aliunde proof to have been actually litigated and determined. [Cits.]" *Sumner v. Sumner*, 186 Ga. 390 (2), supra at pages 390-391. Further, for the judgment in the former decision (here the federal courts) to be conclusive, it must have been based not merely on purely technical grounds, but in part on the merits where under the pleadings they were or could have been involved. See OCGA § 9-12-42 (formerly Code § 110-503). Of course, the party who did not participate in the prior litigation is not precluded from enforcement of his claims under doctrines of estoppel by judgment, collateral estoppel or binding precedent, where the judgment relied on as barring his action results from an action in which he did not participate and is not a result of a general adversary proceeding. See *Blakely v. Couch*, 129 Ga. App. 625 (200 SE2d 493). In the case sub judice, however, the plaintiff did participate in the bankruptcy proceedings, as well as the alleged co-conspirator Henry who was discharged over plaintiff's objection. Thus there remains for decision whether or not that judgment and the rulings in the federal courts in any wise barred the plaintiff from seeking judgment against the remaining defendants (Henry's counsel in the various and sundry actions in which they were involved). As stated in *Smith v. Wood*, 115 Ga. App. 265 (1) (154 SE2d 646), it is not essential that the same claim or cause of action be involved but the former adjudication can be a bar if the same issues were litigated by the parties or their privies (in the case sub judice the plaintiff and the alleged co-conspirator of these defendants). See also in this connection *Woods v. Delta Air Lines*, 237 Ga. 332 (227 SE2d 376); *Greene v. Transport Ins. Co.*, 169 Ga. App. 504 (1) (313 SE2d 761). As the same question (to set aside alleged fraudulent conveyances) was presented in the bankruptcy court and is again presented here in this case and the same set of facts apply as to the question decided by the court of competent jurisdiction, the doctrine of estoppel applies. See *Woods v. Delta Air Lines*, 237 Ga. 332, supra; *Mimms v. Sisk Decorating Co.*, 156 Ga. App. 572, 574 (2) (275 SE2d 148).

Again we look to the evidence as to whether or not all or any of the questions involved in the bankruptcy court have been answered so as to bar this action. As shown above, we have eliminated the Estonia Street and Bowman Street properties as being in any way involved with reference to any claims of fraud. See Division 1 (a) above. Likewise in Division 1 (b) above, the American Family Corporation stock was in no wise involved in this litigation inasmuch as the only connection to the defendants was information of fact that defendant Miller did call the stock transfer agent with reference to the missing or lost stock certificates. With reference to the joint venture known as Diesel Parts which we assume is still in existence, it was transferred to Chucko, Inc., and its assets and liabilities, if any, are contained within Chucko, Inc. said corporation now being controlled (we assume) by the sole owner Henry (the bankrupt) who obtained its release along with his other personal property for $25,000 paid into bankruptcy court.

Looking next at the transfer of ownership of the bankrupt's home to his wife, it is clear the plaintiff sought to set aside this conveyance as an illegal conveyance in the bankruptcy court in which he was unsuccessful. Indeed, the trustee in bankruptcy made an adverse finding with reference to same, and the plaintiff's objections thereto were overruled and denied, approved by the bankruptcy court and thereafter affirmed by the federal district court.

The Shady Oaks property we must assume is now owned by Chucko, Inc. (the stock of Chucko, Inc. having been released by the bankruptcy court by the payment of $25,000 paid into that court by the bankrupt (Henry) in order to obtain the release of his personal items including this stock). Certainly the only way to hold that this sale or release by the bankruptcy trustee to the bankrupt was fraudulent would require the participation of the trustee in any fraud in the transfer for insufficient and inadequate consideration with the intent and purpose of hindering, delaying or defrauding the rights of the plaintiff to collect the lawful debt owed to him by the bankrupt. The federal courts approved this sale. We note here his objections were overruled and thereafter approved and affirmed by the federal courts. Indeed, as the judgment relates to the alleged co-conspirator Henry then certainly he was privy to the other alleged co-conspirators (the defendants herein). See *Caswell v. Caswell*, 162 Ga. App. 72, 73 (290 SE2d 171). Clearly, the bankruptcy judgment estops the plaintiff with reference to this action of conspiracy allegedly by and between the bankrupt and these defendants as to the facts therein put in issue. The doctrine of estoppel clearly applies here.

3. For all of the foregoing reasons (in Divisions 1 and 2) the trial court erred in failing to grant the motion for judgment notwithstanding the verdict. On return of the remittitur the trial court is directed

to enter judgment accordingly for the individual defendants James W. Oxendine, John Jay and Allan Miller.

4. The rulings above render it unnecessary to further consider the various and sundry remaining enumerations of error with reference to the trial, the trial court's rulings therein, questions of evidence and testimony, motions, admissions of evidence and failure to charge the jury with reference to written requests or other objections to charges given and any and all other claimed errors occurring.

*Judgment reversed with direction. Shulman, P. J., and Birdsong, J., concur.*

DECIDED MARCH 8, 1984 —
REHEARING DENIED MARCH 21, 1984 — 

*Max R. McGlamry, William G. Scrantom, Jr., Ernest Kirk II*, for appellants.
*Peter G. Williams, Martha F. M. Chewning*, for appellee.