In the Matter of William
R. POPE, Debtor.

William R. POPE, Plaintiff,

v.

Rebecca R. WAGNER, Defendant.

Bankruptcy No. N94–11020–WHD.
Adversary No. 95–1037N.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

June 16, 1997.

Griffin E. Howell, III, Newton & Howell, P.C., Griffin, GA, for Defendant.

H. Brooks Cotten, Newnan, GA, for Debtor/Plaintiff.

## *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in these proceedings is the Motion for Summary Judgment of Rebecca R. Wagner (hereinafter "the Creditor"). The Creditor's motion arises from a "Complaint to Determine Dischargeability of Debt and Complaint for Contempt," filed by William R. Pope (hereinafter "the Debtor") in the course of his Chapter 7 bankruptcy case. As such, this matter falls within the subject matter jurisdiction of the Court, *see* 28 U.S.C. § 157(b)(2)(A), (I) & (O), and it shall be disposed of in accordance with the Findings of Fact and Conclusions of Law that follow.

### FINDINGS OF FACT

On May 6, 1994, the Debtor filed his present bankruptcy case under Chapter 13 of the Bankruptcy Code. Prior to his case's conversion to a Chapter 7 liquidation proceeding, the Debtor and Creditor were divorced in the Superior Court of Coweta County, Georgia, on or about December 21, 1994. The decree of divorce ordered the Debtor to pay $2,539.10 to the creditor in ten monthly installments of $133.91, and thereafter to pay sixteen monthly installments of $75.00. As to these remittances, the decree noted "[w]hile said payments are support payments made to or for the benefit of the Plaintiff, these payments on behalf of the Plaintiff, as between the parties, shall not be considered income to the Plaintiff nor deductible by the Defendant." *Pope v. Pope*, No. 94–V–508 at 3 (Sup.Ct. Coweta County filed Dec. 21, 1994).

 The Debtor listed the above-mentioned $2,539.10 debt to his former spouse as part of his Chapter 7 bankruptcy schedules, identifying the same as a "property settlement" obligation. Finding the character of the obligation owed her then to be in question, the Creditor returned to the state court, where she sought and obtained a determination that the $2,539.10 debt constituted an item of nondischargeable support pursuant to 11 U.S.C. § 523(a)(5).[1] As part of that determination, the divorce court also found specifically that the Creditor's act of returning to state court had not violated bankruptcy's automatic stay, but instead came within the stay exception provided by Code section 362(b)(2)(A)(ii). *See* 11 U.S.C. § 362(b)(2)(A)(ii) ("[t]he filing of a petition ... does not operate as a stay .... of the commencement or continuation of an action or proceeding for ... the establishment or modification of an order for alimony, maintenance, or support").

---

1. Regarding the dischargeability of such divorce-related obligations, the Bankruptcy Code makes the following provision:

 (a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

 \* \* \* \* \* \*

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement

 \* \* \* \* \* \*

 11 § 523(a)(5). Whether a debt to a former spouse qualifies as nondischargeable support is said to involve questions of federal rather than state law. *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 762 (3d Cir.1990); *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989). Thus, the label placed upon an obligation by the consent agreement or court order which created it will not determine its subsequent dischargeability in bankruptcy. *Joseph v. O'Toole (In re Joseph)*, 16 F.3d 86, 88 (5th Cir.1994); *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 722 (10th Cir.1993); *see also In re Bowsman*, 128 B.R. 485, 487 (Bankr.M.D.Fla.1991); *In re Edwards*, 33 B.R. 942, 944 (Bankr.N.D.Ga.1983) (advancing a standard involving substantially similar points of consideration). It is the creditor's burden to establish any and all prerequisites to nondischargeability under section 523(a)(5). *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986).

In the wake of the state court's ruling, the Debtor since has returned to this Court, filing his present "Complaint to Determine Dischargeability of Debt and Complaint for Contempt."[2] In support of this action, the Debtor acknowledges that the state courts have concurrent jurisdiction to determine dischargeability of marital obligations under 11 U.S.C. § 523(a)(5). Nevertheless, he contends that such state court actions may only be commenced subject to the parameters of bankruptcy's automatic stay. Thus, since the Creditor did not obtain stay relief prior to returning to state court, the Debtor alleges that the judgment rendered therein is void, and that the dischargeability of the underlying debt remains a subject of dispute. Further, the Debtor asserts that the Court should sanction the Creditor's circumvention of bankruptcy court processes, as a willful violation of the automatic stay. Viewing the Debtor's arguments as hinged upon legal issues already settled by the divorce court, the Creditor has filed the instant Motion for Summary Judgment.

### CONCLUSIONS OF LAW

#### I. The Summary Judgment Standard.

■ In accordance with Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, this Court will grant a motion for summary judgment only in the absence of any material issue of fact, so as to make the movant entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant has the burden to establish that no such factual issue exists, *id.* at 324, 106 S.Ct. at 2553, and the Court will read the opposing party's pleadings liberally. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). As a drastic remedy, summary judgment only will be granted when there is no room for controversy. *United States v. Earhart (In re Earhart),* 68 B.R. 14, 15 (Bankr. N.D.Iowa 1986); *Sell v. Heath (In re Heath),* 60 B.R. 338, 339 (Bankr.D.Colo.1986).

#### II. The Impact of Georgia State Court Judgments Upon Subsequent Nondischargeability Proceedings in Bankruptcy.

■■ State court judgments "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. This requirement of "full faith and credit" applies in dischargeability proceedings, just as it would in any other court action. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 381, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985); *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982) ("it has long been established that section 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state court judgments"); *see also Nourbakhsh v. Gayden (In re Nourbakhsh),* 162 B.R. 841, 843 (9th Cir. BAP 1994); *Wright v. McIntyre (In re Wright),* 57 B.R. 961, 963 (Bankr.N.D.Ga. 1986) (Drake, B.J.) (the effect of a State Superior Court judgment "is governed by the principles of full faith and credit set forth in 28 U.S.C. § 1738"). Thus, when certain issues relative to a nondischargeability complaint may have already been decided by a Georgia state court judgment, bankruptcy courts must look to state law to determine the preclusive effect of that preceding judgment. *Aerojet–General Corp. v. Askew,* 511 F.2d 710, 721 n. 11 (5th Cir.), *reh'g denied,* 514 F.2d 1072 *cert. denied, Metropolitan Dade County, Fla. v. Aerojet–General Corp.,* 423 U.S. 1026, 96 S.Ct. 470, 46 L.Ed.2d 400 (1975).

■ In Georgia, the res judicata effect of judgments is defined by O.C.G.A. § 9–12–40, which provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the case wherein the judgment was ren-

---

2. As part of this action, the Debtor notes that the Creditor originally sought a finding of contempt as well as a determination of dischargeability when she returned to the state court. To the extent that the Creditor withdrew this additional request prior to the state court's disposition of her complaint, however, there appears to have been neither harm nor foul in this temporary infraction. *Cf.* § 362(a)(6) (prohibiting "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case").

dered, until such judgment shall be reversed or set aside." *Id; see also Southern Jam, Inc. v. Robinson,* 675 F.2d 94, 96, 98 (5th Cir.1982); *Smith v. Wood,* 115 Ga.App. 265, 266–67, 154 S.E.2d 646 (1967). Under this standard, as under its federal counterpart, res judicata will bar a subsequent judicial proceeding whenever three essential criteria have been met: (1) a court of competent jurisdiction rendered a prior decision; (2) the prior decision was a final judgment on the merits; and (3) the same cause of action and the same parties (or their privies) were involved in both the former and present cases. *Booth v. Quantum Chem. Corp.,* 942 F.Supp. 580, 584 (S.D.Ga.1996) (citing *Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983); *Akin v. PAFEC, Ltd.,* 991 F.2d 1550, 1556 (11th Cir.1993)).

### III. Application to this Case.

■ In the instant case, the Debtor concedes that the state court previously entered a final judgment of nondischargeability in an action involving the parties to this adversary. Moreover, the Debtor agrees that the divorce court held subject matter jurisdiction, concurrently with this Court,[3] to reach a determination of section 523(a)(5)'s applicability. *Thaggard v. Pate (In re Thaggard),* 180 B.R. 659, 661 (M.D.Ala.1995); *Rosenbaum v. Cummings (In re Rosenbaum),* 150 B.R. 994, 996 (E.D.Tenn.1993); *see also Saler v. Saler (In re Saler),* 205 B.R. 737, 746 (Bankr. E.D.Pa.1997) (a creditor may raise a section 523(a)(5) nondischargeability action in a state court at any time). Nevertheless, he seeks to avoid the preclusive effect of the divorce court's decision, asserting that it came in

violation of the automatic stay and, therefore, that the resulting judgment is void on its face.

■ As the Debtor observes, section 362(a) of the Bankruptcy Code operates as a stay against "any act to obtain possession of property of the estate or property from the estate"[4] as well as any effort to collect on a pre-petition debt, by judicial means or otherwise. *See* 11 U.S.C. §§ 362(a)(1), (3) & (6). Acts taken in violation of the automatic stay generally are said to be voidable at the Court's discretion. *See Roseman v. Roseman,* 14 F.3d 602, 1993 WL 513899, No. 93–5099 at * 2–4 (6th Cir. Dec. 09, 1993) (citing *In re Albany Partners,* 749 F.2d 670, 675–76 (11th Cir.1984)). Similarly, because the automatic stay provision trumps any statute conferring concurrent jurisdiction on other courts in civil proceedings, a nonbankruptcy court lacks jurisdiction to the extent that it determines matters in violation of the automatic stay. *See e.g., Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin),* 179 B.R. 913, 925 (Bankr.E.D.Cal.1995); *Anderson v. Briglevich,* 147 B.R. 1015 (Bankr.N.D.Ga. 1992). For this reason, to the extent that a stay violation occurred when the Creditor submitted her grievances for the state court's determination, the Debtor correctly observes that the resulting judgment should not preclude further litigation of the underlying dischargeability question. *Id.*

Prerequisite to such a conclusion, however, the dischargeability proceeding conducted in the Superior Court must be determined to have actually taken place in violation of Bankruptcy's automatic stay. In particular, success by the Debtor in these contentions

---

**3.** The Supreme Court previously has noted that a bankruptcy court may not abdicate any responsibilities of exclusive jurisdiction by applying claim preclusion to the ultimate legal question of a debt's dischargeability. *Brown v. Felsen,* 442 U.S. 127, 135, 99 S.Ct. 2205, 2211, 60 L.Ed.2d 767 (1979) (refusing to apply res judicata to a state court action because doing so "would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court"). In contrast to the nondischargeability provisions at issue in *Brown,* however, the applicability of section 523(a)(5) does not fall within the exclusive jurisdiction of the bankruptcy court. *See* 11 U.S.C. § 523(c); *see also* Fed.R.Bankr.P. 4007 (Adv.Comm.Note). As such, that precedent may be distinguished from the case sub judice. *See*

*Rosenbaum v. Cummings (In re Rosenbaum),* 150 B.R. 994, 996 n. 2 (E.D.Tenn.1993) ("*Brown,* however, is not applicable to the facts of this case because it addressed the amended § 17 of the former Bankruptcy Act, the predecessor to § 523 of the Code. The Bankruptcy Code now provides that state courts have concurrent jurisdiction to resolve dischargeability issues under § 523(a)(5)").

**4.** By virtue of section 541, which is meant to be read broadly, the commencement of a bankruptcy case creates an estate comprising all the debtor's legal and equitable interests. *See* 11 U.S.C. § 541; *see also United States v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

would necessitate a finding that section 362(b) does not license such state court actions through the following provision:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
>
> \* \* \* \* \* \*
>
> (2) under subsection (a) of this section—
>
> (A) of the commencement or continuation of an action or proceeding for—
>
> (I) the establishment of paternity; or
>
> (ii) the establishment or modification of an order for alimony, maintenance, or support;
>
> \* \* \* \* \* \*

11 U.S.C. § 362(b)(2). No bankruptcy court as of yet has determined the applicability of subsection (b)(2)(A)(ii), which was enacted as part of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, 4134 (1994), to the commencement of post-petition

dischargeability actions in the state courts. Likewise, the Court now shall refrain from comment on the merits of that complex issue to the extent that those matters already have been decided by the Superior Court of Coweta County.[5]

 Like questions of dischargeability, the applicability of the automatic stay falls concurrently [6] within the purview of the bankruptcy court and that of the state court. *See In re Cummings,* 201 B.R. 586, 588 (Bankr.S.D.Fla.1996); *In re Izzi,* 196 B.R. 727, 729 (Bankr.E.D.Pa.1996); *Jeffries v. Bar J. Forest Prods., Inc. (In re Jeffries),* 191 B.R. 861, 863 (Bankr.D.Or.1995); *Rogers v. Overstreet (In re Rogers),* 164 B.R. 382, 390 (Bankr.N.D.Ga.1994) (Drake, B.J.) (noting that state courts hold concurrent jurisdiction to determine the applicability of the automatic stay). Consequently, insofar as the question already has been litigated and determined as a necessary part of a divorce court's judgment, the doctrine of collateral estoppel [7] should prohibit rehashing the man-

---

5. The Court need not, and shall not, comment upon whether this newly enacted stay exception permits a nondischargeability action to be commenced post-petition in state court without first obtaining stay relief from the bankruptcy court. To the extent that the Superior Court's determination of the point will not bind future cases, however, the Court notes that members of the bar would be better advised to obtain stay relief before commencing such actions. As one court previously has noted when facing a similar creditor's gamble:

 > [I]f there is uncertainty about an order of the Court, or, as in this case, the applicability of the automatic stay and the dischargeability of a particular debt, a creditor may petition the Court for clarification, and if the creditor does not, the creditor takes the calculated risk of being held in contempt, *[In re Batla,* 12 B.R. 397, 400 (Bankr.N.D.Ga.1981)] (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 192, 193, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949)).

 *In re Pody,* 42 B.R. 570, 573–74 (Bankr.N.D.Ala. 1984).

6. A careful distinction must be drawn between determining the stay's application and granting relief from its otherwise operative provisions. In dealing with matters before them, state courts may make a valid and binding determination of section 362's applicability. *See, e.g., Nat'l Labor Rel. Bd. v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 939 (6th Cir.1986); *In re Baldwin–United Corp. Litigation,* 765 F.2d 343, 347 (2d Cir.1985); *Watson v. Shandell (In re Watson),* 192 B.R. 739, 746 (9th Cir.BAP 1996). If the

automatic stay does apply to a given action, however, only the bankruptcy court may grant relief from its terms. *See* 11 U.S.C. § 362(d); *see also Justus v. Financial News Network, Inc. (In re Financial News Network, Inc.),* 158 B.R. 570, 572 (S.D.N.Y.1993); *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin),* 179 B.R. 913, 925 n. 32 (Bankr.E.D.Cal.1995); *Mother African Union Methodist Church v. Conference of A.U.F.C.M.P. Church (In re Conference of African Union First Colored Methodist Protestant Church),* 184 B.R. 207, 215 (Bankr.D.Del.1995) ("a motion to modify or lift the provisions of the automatic stay with respect to a particular action must be made to the bankruptcy court which is supervising the reorganization.... In contrast, the issue of the applicability of the automatic stay to the litigation in question is within the competence of both courts—the court in which the litigation is pending, ... and the bankruptcy court supervising the reorganization").

7. The binding effect of a former adjudication, often generically termed res judicata, can take either of two forms. Claim preclusion (traditionally termed res judicata or "merger and bar") " 'bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction.' " *Plough v. West Des Moines Community Sch. Dist.,* 70 F.3d 512, 517 (8th Cir.1995) (quoting *Smith v. Updegraff,* 744 F.2d 1354, 1362 (8th Cir.1984)). Issue preclusion (or "collateral estoppel") applies to legal or factual issues "actually and necessarily deter-

ner in which the Creditor's returning to state court may or may not have violated the automatic stay.[8]

In short, issue preclusion prevents the Debtor from challenging the divorce court's judgment as a stay violation. Furthermore, since he opposes the res judicata effect of the involved nondischargeability determination solely by virtue of such an alleged jurisdictional flaw, the Court finds the Debtor precluded from relitigating dischargeability questions already determined by the Coweta County Superior Court.[9] As such, the Credi-

---

mined," with such a determination becoming "conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Both the principle of res judicata and the doctrine of collateral estoppel generally apply to bankruptcy proceedings. *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966).

Under Georgia law, a theory of issue preclusion, known as estoppel by judgment, applies when the parties or others in privity with them necessarily must have adjudicated the same issue in order for the previous judgment to have been entered, or when that matter actually was litigated and determined. *Kent v. Kent*, 265 Ga. 211, 211–212, 452 S.E.2d 764 (1995) (citing *Boozer v. Higdon*, 252 Ga. 276, 278, 313 S.E.2d 100 (1984)); *Dept. of Human Resources v. Fleeman*, 263 Ga. 756, 757, 439 S.E.2d 474 (1994); *Oxendine v. Elliott*, 170 Ga.App. 422, 431, 317 S.E.2d 555 (1984); *Blakely v. Couch*, 129 Ga.App. 625, 626, 200 S.E.2d 493 (1973). "Collateral estoppel in Georgia stems from this general principle of law, as state courts have used the conclusive nature of a judgment to preclude re-litigation in a future court action of those matters already put in issue and decided." *Moore v. Gill (In re Gill)*, 181 B.R. 666, 671 (Bankr.N.D.Ga.1995) (Drake, B.J.).

As applied in case law, the collateral estoppel doctrine breaks into a four-part test. *Kent*, 265 Ga. at 211–12, 452 S.E.2d 764. First, there must exist an identity of issues between the first and second actions. *Department of Human Resources v. Fleeman*, 263 Ga. 756, 757, 439 S.E.2d 474 (1994); *Norris v. Atlanta & West Point R. Co.*, 254 Ga. 684, 685, 333 S.E.2d 835 (1985); *Greene v. Transport Ins. Co.*, 169 Ga.App. 504, 504–05, 313 S.E.2d 761 (1984); *Klosterman v. Tudor*, 170 Ga.App. 4, 5, 315 S.E.2d 920 (1984). Second, the duplicated issue must have been actually and necessarily litigated in the prior court proceeding. *See Boozer v. Higdon*, 252 Ga. 276, 278, 313 S.E.2d 100 (1984); *Swinney v. Reeves*, 224 Ga. 274, 276, 161 S.E.2d 273 (1968); *Buie v. Waters*, 209 Ga. 608, 610, 74 S.E.2d 883 (1953); *Gregory v. J.T. Gregory & Son, Inc.*, 176 Ga.App. 788, 790, 338 S.E.2d 7 (1985); *see also Walton Motor Sales, Inc. v. Ross*, 736 F.2d 1449, 1455 (11th Cir.1984); *Samuel v. Baitcher (In re Baitcher)*, 36 B.R. 588, 593 (Bankr.N.D.Ga.1983) (Kahn, C.J.). Third, determination of the issue must have been essential to the prior judgment. *Kent*, 265 Ga. at 212 n. 2, 452 S.E.2d 764. Finally, the party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding. *Winters v. Pund*, 179 Ga.

App. 349, 352, 346 S.E.2d 124 (1986); *Watts v. Lippitt*, 171 Ga.App. 578, 579, 320 S.E.2d 581 (1984).

8. Here, there exists an identity of issues between the state court action and the matter at hand, i.e., the applicability of Bankruptcy Code section 362(b)(2)(A)(ii) to the post-petition state court action. That the automatic stay barred such a post-filing action in the divorce court appears to have been heavily litigated, as it formed the Debtor's primary line of defense to that proceeding. Indeed, the Debtor's own filing of a "Notice of Stay on Account of Bankruptcy" appears to have precipitated the analysis of section 362's governance that culminated with the Superior Court's finding that an exception applied. As is evidenced by the preceding discussion, that finding was essential to the validity of the underlying judgment from a jurisdictional standpoint. Finally, the Court finds that the Debtor had a full and fair opportunity to litigate the state action with the assistance of counsel. *See e.g., Watts*, 171 Ga.App. at 579, 320 S.E.2d 581 (generally referring to previous litigation opportunity as the final element in Georgia's collateral estoppel doctrine).

In sum, the doctrine of claim preclusion will serve to bar relitigation of the nondischargeability question, provided that the state court's resolution of that matter was not jurisdictionally defective by virtue of the automatic stay's governance. Given the state court's secondary finding that the exception of 11 U.S.C. § 362(b)(2)(A)(ii) applied to the matter before it, the doctrine of issue preclusion will prevent any challenge to the jurisdictional validity of the court's dischargeability decision under section 362. Thus, collateral estoppel removes from consideration the only basis on which the dischargeability determination might be assailed, i.e., that, as a stay violation, the divorce court's ruling came without proper jurisdiction and it consequently should not merit res judicata's application.

9. As an aside, the Court notes that the matters before it might independently be controlled by the reasoning of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Based upon a recognition that inferior federal courts generally do not have the power to exercise appellate review over state court decisions, the *Rooker–Feldman* doctrine directs that, even if a state court decision was wrong, only the Supreme Court has the power to reverse or mod-

tor stands entitled to judgment as a matter of law in this proceeding, and her Motion to that effect shall be granted at this time.

CONCLUSION

No material question of law or fact exists regarding the res judicata effect of a previous order by the Superior Court of Coweta County disposing of the matters involved in this action. *See Pope v. Pope*, No. 94–V–508 at 3 (Sup.Ct. Coweta County filed Dec. 21, 1994). As such, summary judgment is appropriate in this matter in favor of Rebecca R. Wagner and against William R. Pope. A judgment to that effect shall be entered contemporaneously herewith.

**IT IS SO ORDERED.**

ify that judgment, since jurisdiction of federal trial courts is strictly original. *See Rooker,* 263 U.S. at 415–16, 44 S.Ct. at 150 (finding no jurisdiction to hear a disappointed litigant's claim that the state court's judgment was voidly "rendered and affirmed in contravention of the contract clause of the Constitution of the United States ... and the due process of law and equal protection clauses of the Fourteenth Amendment...."); *Feldman,* 460 U.S. at 482, 103 S.Ct. at 1315 (only the Supreme Court itself holds the power to review the final determinations of state courts). Thus, taken together, *Rooker* and *Feldman* stand generally for the proposition that the lower federal courts "do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings." *Gu v. Municipal Gov't of New York,* 1997 WL 280056, No. 96–2857 at *3 (2d Cir. May 23, 1997); *Neal v. Wilson,* 112 F.3d 351, 355–56 (8th Cir.1997); *Biddulph v. Mortham,* 89 F.3d 1491, 1495 n. 1 (11th Cir.1996); *Homola v. McNamara,* 59 F.3d 647, 650 (7th Cir.1995).

In order to determine the applicability of the *Rooker–Feldman* doctrine, one must ask whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or whether it is distinct from that judgment. *Powell v. Powell,* 80 F.3d 464, 466 (11th Cir.1996). If the injury alleged resulted from the state court judgment, *Rooker–Feldman* directs that the lower federal court lack jurisdiction. If the injury alleged is distinct from that judgment, i.e., the party maintains an injury not "inextricably intertwined" with the judgment's entry, then res judicata may apply, but *Rooker–Feldman* does not. *See Neal,* 112 F.3d at 355–56.

Here, the Debtor claims injury at the hands of a state court due to its decision in a civil case. His argument, that the state court's judgment is void as a contravention of the automatic stay, certainly intertwines itself inextricably with the handling of the state court litigation. *Cf. Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995) (*Rooker–Feldman* precludes a federal action if the relief requested would effectively reverse the state court decision or void its ruling). As such, independent of res judicata's governance, *Rooker* and *Feldman* would likely deprive the Court of jurisdiction to hear the Debtor's present grievances, to the extent that they instead should have been presented to the Georgia Court of Appeals.